**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 14 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MANUEL CORDOVA,

        Plaintiff-Appellant,

v.

PEAVEY COMPANY, a wholly
owned subsidiary of Conagra, Inc.,

        Defendant-Appellee,

and

POARCH BROTHERS, INC.,

        Defendant.

No. 03-2295
(D.C. No. CIV-01-1026 WJ/KBM)
(D. N.M.)
(273 F. Supp. 2d 1213)

---

**ORDER AND JUDGMENT** *

---

Before **McCONNELL** , **HOLLOWAY** , and **PORFILIO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Manuel Cordova (Cordova) appeals the district court's grant of summary judgment against him and in favor of Peavey Company (Peavey) on Cordova's claims of personal injury in the course of his employment.  We affirm.

## I.

### *Background*

Cordova was employed by SOS Staffing Services, Inc. (SOS).  In spring 2000, pursuant to a contract between SOS and Peavey, Cordova began work as a temporary employee for Peavey.  Under the terms of the contract between SOS and Peavey, temporary employees were supposed to perform jobs requiring simple manual labor, and they were not supposed to operate machinery or vehicles.

Nevertheless, on Monday, April 3, 2000, Cordova was instructed to service a certain truck and then move it to be loaded with grain.  He was told that he would be assisting with the loading process, but was not given specific instructions as to what part of the process he would handle.  On his previous day of work (Saturday, April 1), among other tasks, Cordova had watched the loading to be sure the truck was being loaded evenly, occasionally had turned power on or off to a certain portable grain auger as directed by another worker, Juan Vasquez, and had lubricated the running grain auger as directed by a third worker.

-2-

That Monday, Cordova checked the truck, then moved it to the barn containing the grain. He got out of the truck and went to stand next to Vasquez, who was lubricating the grain auger's chain drive. Cordova saw Vasquez take a grease gun between the grain auger and the tractor. Cordova assumed that Vasquez was between the grain auger and the back of the tractor lubricating certain parts that frequently needed attention. Cordova walked around the front of the grain auger. He noticed there was some grain and a piece of twine inside the chute and reached into the grain auger to remove them. Unaware that Cordova was reaching into the grain auger, Vasquez activated the machine. Cordova was severely injured as his arm was crushed by the grain auger. Ultimately Cordova's left arm was amputated just below the shoulder.

Cordova brought suit against Peavey and the manufacturer of the grain auger, Poarch Brothers, Inc. SOS intervened in the action as a party-plaintiff. The district court ultimately granted judgment in favor of Peavey and against Cordova and SOS based on the exclusivity provisions of the New Mexico Workman's Compensation Act, N.M. Stat. Ann. §§ 52-1-6(D) and (E), 52-1-8, and 52-1-9. *Cordova v. Peavey Co.*, 273 F. Supp. 2d 1213, 1216, 1220 (D.N.M. 2003). The district court subsequently granted a default judgment against Poarch Brothers and in favor of Cordova in the amount of $3,803,593.44.

## II.

### *Discussion*

We recently reiterated our standard of review in a diversity case involving a grant of summary judgment:

> We review the district court's grant of summary judgment *de novo,* applying the same legal standards used by that court. Summary judgment should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law. When, as here, a federal court is exercising diversity jurisdiction, it must apply the substantive law of the forum state, here, New Mexico. We review the district court's determination of New Mexico law *de novo*.

*Kysar v. Amoco Prod. Co.*, 379 F.3d 1150, 1155 (10th Cir. 2004) (quotations and citations omitted).

The only issue properly on appeal is whether the district court erred in not applying certain exceptions to the exclusivity rule that were established by the Supreme Court of New Mexico in *Delgado v. Phelps Dodge Chino, Inc.*, 34 P.3d 1148 (N.M. 2001). Although Cordova has also briefed the issue of whether Peavey may claim the benefit of the worker's compensation exclusivity provisions as either a special or general employer, Cordova's notice of appeal states that he appeals from the district court's order of July 16, 2003. That order addressed only the *Delgado* issue and, consequently, we do not have jurisdiction to review

-4-

any issues other than the *Delgado* issue.[1] *See Averitt v. Southland Motor Inn of Okla.*, 720 F.2d 1178, 1180-81 (10th Cir. 1983) ("[A]n appellate court has jurisdiction to review only the judgment or part of the judgment designated in the notice of appeal. Although we construe notices of appeal liberally in order to avoid denying review of issues that the parties clearly intended to appeal, we may not disregard the plain requirements of the rule and read into the notice something that is not there.") (quotations and citations omitted); *Foote v. Spiegel*, 118 F.3d 1416, 1422 (10th Cir. 1997) (same). Thus, we turn our attention to *Delgado*.

In *Delgado*, a supervisor ordered Delgado to remove a fifteen-foot iron cauldron brimming over with molten slag, without shutting down a furnace or otherwise correcting an especially dangerous emergency condition that caused additional slag to continue flowing. 34 P.3d at 1151. Although Delgado protested the orders, and informed the supervisor that he was not qualified or competent to perform the removal because he had never operated a kress-haul (a special truck for removing the cauldron) alone under runaway conditions, the supervisor insisted he proceed. *Id.* Delgado "emerged from the smoke-filled tunnel, fully engulfed in flames," suffering third-degree burns over his entire

---

[1] Even if we had jurisdiction to review Cordova's arguments regarding Peavey's status, we note that *Vigil v. Digital Equipment Corp.*, 925 P.2d 883, 886-87 (N.M. Ct. App. 1996), and *Rivera v. Sagebrush Sales, Inc.*, 884 P.2d 832, 834-36 (N.M. Ct. App. 1994), would appear to require an affirmance of the district court's decision.

body. *Id.* He later died of his injuries. *Id.* To address the egregious circumstances of this incident, and to bring parity to the New Mexico Worker's Compensation Act, the *Delgado* court held that the exclusivity provision cannot bar a worker's tort claims against an employer where: (1) the employer "engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker"; (2) the employer "expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences"; and (3) the employer's intentional act or omission is the proximate cause of the employee's injury. 34 P.3d at 1155-56.

The Court of Appeals of New Mexico recently interpreted *Delgado* in *Morales v. Reynolds*, 97 P.3d 612, (N.M. Ct. App.), *cert. denied*, No. 28,785 (N.M. 2004). Relying in part on the district court's opinion in the present case, *Cordova*, 273 F. Supp. 2d 1213, the *Morales* court held:

> [T]he mere assertion that the employer did or did not do something that somehow led to the injurious event is not adequate to meet the requirements of *Delgado* . . . . Negligence on the part of the employer does not expose the employer to tort liability, just as negligence on the part of the worker does not preclude relief under the Act.

97 P.3d at 616. The court determined that, to establish a *Delgado* claim, a plaintiff must: (1) "plead and show that 'a reasonable person would expect the injury suffered by the worker to flow from the intentional act or omission'"; and (2) in the context of summary judgment, provide evidence of the employer's

-6-

subjective state of mind, which may be done "by showing that the employer never considered the consequences of its actions or that the employer considered the consequences and expected the injury to occur." *Id.* at 616-17 (quoting *Delgado*, 34 P.3d at 1156). In addition, to survive a pre-trial dispositive motion, a plaintiff must show that "the employer met each of the three *Delgado* elements through actions that exemplify a comparable degree of egregiousness as the employer in *Delgado*." *Id.* at 617. The court then considered the cases of a plaintiff who was injured when his protective gear malfunctioned and a plaintiff who was injured while working without safety equipment and determined that neither of them rose to the level of *Delgado*. *Id.* at 617-19.

Cordova's case is much more similar to the situations discussed in *Morales* than it is to *Delgado*. The acts and omissions of which Cordova complains (including failure to install safety devices, failure to insist on certain safety practices, failure to train, and failure to supervise) do not rise to the level of the employer's actions in *Delgado*. At most, such actions were negligent. *See id.* at 618 ("There is no indication that [defendants] knew or should have known that their actions were the equivalent of sending Morales into certain severe injury or death."), 619 ("[T]here is no indication that the failure to provide safety devices was anything but negligent in this case."). In addition, as Cordova admits, no one directed him to service or operate the grain auger on the day he was injured (Aplt.

-7-

App. at 232, 236), and no one required or directed him to remove the twine or grain from the grain auger (Aplt. App. at 244-45, 246)    . Consequently, there is no proximate cause between any intentional conduct by Peavey and Cordova's injury. *See Morales* , 97 P.3d at 618 ("The acts or omissions that Morales argues did not cause the injurious event in the way that the acts of the employer in      *Delgado* caused Delgado to be set on fire.").

For these reasons, the judgment of the district court is AFFIRMED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge