**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TIMOTHY L. BLIXSETH, an individual,

     Plaintiff - Appellant,

v.

CUSHMAN & WAKEFIELD OF
COLORADO, INC., a Colorado
corporation; DEAN PAAUW, an
individual and citizen of the State of
Colorado; CUSHMAN & WAKEFIELD,
INC., a New York corporation; CREDIT
SUISSE AG, a Swiss Corporation;
CREDIT SUISSE GROUP AG, a Swiss
corporation; CREDIT SUISSE
SECURITIES (USA), LLC, a Delaware
limited liability company; CREDIT
SUISSE (USA), INC., a Delaware
corporation; CREDIT SUISSE
HOLDINGS (USA), INC., a Delaware
corporation; CREDIT SUISSE CAYMAN
ISLAND BRANCH, an entity of unknown
type; DOES 1-100,

     Defendants - Appellees.

No. 15-1375
(D.C. No. 1:12-CV-00393-PAB-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **PHILLIPS** and **SEYMOUR**, Circuit Judges.[**]

_____

## BACKGROUND

This case stems from longstanding bankruptcy proceedings for the

Yellowstone Mountain Club. Other courts have set out the events occurring before

and after the bankruptcy filing, and we do not detail them here.[1] For this appeal, we

simply note that in 1997, Timothy Blixseth and his wife (now ex-wife and present

adversary) founded the Yellowstone Mountain Club, LLC, a luxury golf and ski

resort in Montana. In 2004, Dean Paauw, an employee of Cushman & Wakefield,[2]

---

[**] The Honorable Neil Gorsuch heard oral argument but did not participate in this Order & Judgment. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. *See* 28 U.S.C. § 46(d); *see also United States v. Wiles*, 106 F.3d 1516, 1516 n* (10th Cir. 1997) (noting this court allows remaining panel judges to act as a quorum to resolve an appeal); *Murray v. National Broadcasting Co*., 35 F.3d 45, 48 (2nd Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995) (remaining two judges of original three judge panel may decide petition for rehearing without third judge).

[1] The history of the Yellowstone Mountain Club and its bankruptcy are described in detail in *Blixseth v. Kirschner (In re Yellowstone Mountain Club, LLC)*, 436 B.R. 598 (Bankr. D. Mont. 2010). *See also Blixseth v. Glasser (In re Yellowstone Mountain Club, LLC)*, No. 08-61570-11-RBK, 2014 WL 1369363 (D. Mont. Apr. 7, 2014) *aff'd in part and rev'd in part*, 656 F. App'x 307 (9th Cir. 2016); *Kirschner v. Blixseth*, CV 11-08283 GAF (C.D. Cal. June 18, 2014).

[2] In his Complaint, Blixseth asserted claims against Dean Paauw, two Cushman entities, and six Credit Suisse entities: Cushman & Wakefield of Colorado, Inc., Cushman & Wakefield, Inc. (collectively Cushman), and Credit Suisse AG, Credit Suisse Group AG, Credit Suisse Securities (USA), LLC, Credit Suisse (USA), Inc., Credit Suisse Holdings (USA), Inc. and Credit Suisse Cayman Island Branch (collectively Credit Suisse).

appraised the Yellowstone Club for $1.165 billion. In 2005, based on this appraisal, Credit Suisse lent $375 million to the Yellowstone Club.

Until 2008, Blixseth was the president and sole shareholder of Blixseth Group, Inc., which was the majority owner of the Yellowstone Club. From Credit Suisse's $375 million loan to the Yellowstone Club, Blixseth took $209 million for himself based on Credit Suisse's assurances that he could do so.[3] Soon after the loan and Blixseth's cash withdrawal, the Yellowstone Club filed for bankruptcy.

In the district court, Blixseth asserted the same nine claims against each of the Defendants (Dean Paauw, Cushman, and Credit Suisse): (1) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO); (2) common-law fraud; (3) breach of fiduciary duty; (4) common-law negligence and negligent misrepresentation; (5) tortious interference with contractual relations; (6) breach of covenants of good faith and fair dealing under the Uniform Commercial Code and common law; (7) breach of contract; (8) equitable indemnity; and (9) common-law conspiracy.

The Defendants filed motions to dismiss all nine claims. In response, Blixseth abandoned three claims against Cushman—claims for tortious interference with contractual relations, breach of contract, and equitable indemnity. He also abandoned his claim against Credit Suisse for equitable indemnity. After considering the motion

---

[3] In considering the motions to dismiss, we assume the facts alleged in Blixseth's Complaint as true. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

to dismiss the remaining claims, the district court dismissed all remaining claims against Cushman and Dean Paauw. The district court also dismissed all of Blixseth's claims against Credit Suisse except one for tortious interference with contractual relations. Though the district court concluded that it would be futile to allow Blixseth to amend his complaint for most of his claims, it allowed Blixseth leave to amend his complaint to try to assert a plausible claim against Credit Suisse for breach of the implied covenant of good faith and fair dealing. Blixseth amended his Complaint and reasserted that claim.

Thus, two claims against Credit Suisse survived dismissal: (1) the claim alleging tortious interference with a contract, and (2) the claim alleging breach of the implied covenant of good faith and fair dealing. Credit Suisse sought and won summary judgment on these two claims. Blixseth now appeals the district court's orders granting dismissal and summary judgment against his claims.

## DISCUSSION

### I. Motion to Dismiss

#### A. Jurisdiction

Before addressing the merits of this appeal, we must address Cushman's motion arguing that we lack appellate jurisdiction to review Blixseth's claims dismissed for failure to state a claim. Among the prerequisites to our appellate jurisdiction is one requiring that appellants, in their notices of appeal, "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B); *see McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002).

4

In his Notice of Appeal, Blixseth designated as "the judgment, order, or part thereof being appealed," "the final judgment entered on September 4, 2015, a copy of which is attached hereto as Exhibit 1." R. Vol. 8 at 2068. But instead of attaching the final judgment, Blixseth attached the district court's summary-judgment order. From this, Cushman argues that Blixseth has waived his right to appeal any issues outside the summary-judgment order—specifically any issues arising from the order granting the motions to dismiss. We disagree, because the designation, not the attachment, governs the scope of a permissible appeal. *See McBride*, 281 F.3d at 1103–04. By designating the final judgment, all earlier orders merged into that final judgment. *Id.* ("[A] notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment."). In fact, Rule 3 doesn't even require appellants to attach the order they intend to appeal. *See* Fed. R. App. P. 3.

None of Cushman's cited cases persuade us otherwise. Unlike in those cases, Blixseth designated the entire final judgment in his Notice of Appeal, not an earlier order or a part of the final judgment. *See Averitt v. Southland Motor Inn of Okla.*, 720 F.2d 1178, 1180–81 (10th Cir. 1983) (defendant designated the district court's final judgment "insofar as that judgment relates to punitive damages," so we disallowed an appeal of the entire judgment). Thus, we have jurisdiction over the claims dismissed in response to the Defendants' motions to dismiss.

## B.    Standing

On appeal, Blixseth argues that the district court erred in concluding that he lacked prudential standing to assert his claims alleging RICO violations, fraud,

5

breach of fiduciary duty, negligence, and negligent misrepresentation.[4] Blixseth

challenges the district court's conclusion that his claimed injuries were derivative of

the Yellowstone Club's. We review de novo questions of standing. *Wyoming ex rel.*

*Crank v. United States*, 539 F.3d 1236, 1241 (10th Cir. 2008).

In a thorough and well-reasoned order, the district court correctly applied the

general rule that shareholders lack standing to assert claims when their losses are

only derivative of a corporation's losses, meaning that the individual's losses depend

on the company's losses. *See Niemi v. Lasshofer*, 728 F.3d 1252, 1260 (10th Cir.

2013).

In ruling, the district court also considered an exception to this rule, one

allowing shareholders "with a direct, personal interest in a cause of action to bring

suit even if the corporation's rights are also implicated." R. Vol. 4 at 1090 (quoting

*Bixler v. Foster*, 596 F.3d 751, 757 (10th Cir. 2010)). But the district court concluded

that this exception didn't apply. It reasoned that Blixseth had signed the loan

documents with Credit Suisse as the Yellowstone Club's manager, that Credit Suisse

had lent money to the Yellowstone Club and not Blixseth, and that Credit Suisse's

alleged misrepresentations had been made to Blixseth as President of Blixseth Group,

Inc., and as the Yellowstone Club's manager. Thus, the district court concluded that

Blixseth lacked prudential standing to assert his RICO, fraud, breach of fiduciary

duty, negligence, and negligent misrepresentation claims against the Defendants

---

[4] Blixseth does not appeal the district court's dismissal of his claim for breach of fiduciary duty.

6

because his alleged injuries derived from the Yellowstone Club's injuries. Accordingly, the district court dismissed these claims.

Next, the district court dismissed Blixseth's breach-of-contract claim, finding it barred by an exculpation clause in the Third Amended Plan of Organization from the Yellowstone Club bankruptcy.[5] The district court reasoned that the exculpation clause bars claims against Credit Suisse arising from the Yellowstone Club's bankruptcy.[6]

Now Blixseth argues that the district court erred on the prudential-standing and exculpatory-clause grounds. After reviewing the record, the briefing, and all of Blixseth's arguments, we affirm the district court's Order granting Cushman and Dean Paauw's motion to dismiss and partially granting Credit Suisse's motion to dismiss. We do so for substantially the same reasons given by the district court in its detailed Order.

## II.     Summary Judgment

Blixseth also claims that the district court erred in granting summary judgment in favor of Credit Suisse on his claims for (1) tortious interference with contractual

---

[5] We review de novo the district court's holding that Blixseth's Complaint failed to state a breach-of-contract claim under Fed. R. Civ. P. 12(b)(6). *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).

[6] The district court dismissed Blixseth's conspiracy claim after dismissing the conspiracy's underlying tort claims. On appeal, Blixseth argues that if we reinstate "any of the dismissed claims, Cushman would then be properly subject to liability as a co-conspirator." Appellant's Opening Br. at 19 n.4. Because we do not reinstate any of the dismissed claims, and because Blixseth does not argue that the district court erred in dismissing his conspiracy claim, we affirm the dismissal of this claim.

relations, and (2) breach of the implied covenant of good faith and fair dealing. Blixseth argues that the Yellowstone Club Liquidating Trust interfered with certain releases obtained in his divorce proceedings. The Yellowstone Club's bankruptcy-reorganization plan created the Yellowstone Club Liquidating Trust to receive and hold the Yellowstone Club's property. The Liquidating Trust substituted for the Yellowstone Club and pursued its claims against Blixseth. Blixseth claims that because Credit Suisse controls the Liquidating Trust, Credit Suisse also controls the Liquidating Trust's actions. Absent showing that Credit Suisse had this control, Blixseth's claims for breach of the implied covenant of good faith and fair dealing and tortious interference with contractual relations must fail.

The district court determined that Blixseth is collaterally estopped from this argument because the Bankruptcy Court for the District of Montana had already ruled that Credit Suisse didn't control the Liquidating Trust. *See Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009) ("Collateral estoppel bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."). Thus, the district court dismissed Blixseth's claims that Blixseth premised on Credit Suisse's alleged control of the Liquidating Trust.

The district court also acknowledged that Blixseth asserted that Credit Suisse had targeted Blixseth to fund the bankruptcy-reorganization plan, even before the Liquidating Trust was formed. The district court concluded that Blixseth had failed to show that Credit Suisse caused any damages. After thoroughly addressing each of

8

Blixseth's arguments, the district court dismissed his remaining claims and entered a final judgment in favor of the Defendants.

After reviewing the record and the briefing, including all of Blixseth's materials, we find no error in the district court's detailed summary-judgment order. We affirm for substantially the same reasons stated by the district court.

## III. Request for Additional Discovery

Finally, Blixseth claims the district court erred in denying his request for additional discovery under Federal Rule of Civil Procedure 56(d). Blixseth requested the district court delay its summary-judgment ruling until he could complete additional discovery. On appeal, Blixseth simply claims that the district court erred in concluding that the discovery he sought was irrelevant. Indeed, the district court found that Blixseth's additional discovery would not be relevant to the claim-preclusion issues or be unavailable in related proceedings. For substantially the same reasons stated by the district court, the district court didn't abuse its discretion in denying Blixseth's request for additional discovery.

## CONCLUSION

For the reasons stated above, Cushman's motion to dismiss this appeal is denied. The district court's judgment is affirmed.

Entered for the Court


Gregory A. Phillips
Circuit Judge

9